**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ODELL ROBERT JOHNSON,** | ) | |
| | ) | **CRIMINAL ACTION** |
| Petitioner, | ) | **02-cr-656-01** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **CIVIL ACTION** |
| | ) | **06-cv-5003** |
| Respondent. | ) | |

---

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                          **November 7, 2008**

Petitioner Odell Robert Johnson seeks to vacate, set aside, or correct the sentence imposed on him by this Court on February 3, 2004.  Petitioner claims he was denied effective assistance of counsel at all critical stages of his criminal proceedings in violation of the Sixth Amendment of the United States Constitution, and that his conviction was obtained and his sentence imposed in violation of the Fifth and Sixth Amendments to the United States Constitution.[1]  Now before the Court is Petitioner's Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, the Government's response, Petitioner's reply, and Petitioner's memorandum in support of his motion filed after an evidentiary hearing was held in this matter.

**I.      FACTUAL AND PROCEDURAL HISTORY**

---

[1] See Pet'r Mot. to Vacate, Set Aside or Correct Sentence Pursuant to § 2255 [Doc. No. 189] ("Pet'r Mot.") ¶ 12(B).  The Court notes that Petitioner claims his "conviction was obtained and/or sentence imposed in violation of the Fifth and Sixth Amendments to the Constitution of the United States, specifically the right to due process of law and equal protection of the laws."  (Pet'r Br. in Supp. of his Mot. to Vacate, Set Aside or Correct Sentence Pursuant to § 2255 [Doc. No. 189] ("Pet'r. Br.") at *2.)  However, Petitioner does not explain how his sentence or conviction violated his Sixth Amendment rights or how he was deprived of equal protection of the laws.  Thus, the Court will not address these arguments, confining its analysis to the Fifth Amendment Due Process claims Petitioner actually argues. (See Pet'r Br. at *19.)

On October 8, 2002, an Indictment was filed charging Petitioner, Frank China, Terrence Perkins, and Derek Wayns with conspiracy, distribution of cocaine, robbery, extortion and aiding and abetting.[2]  Petitioner and China pleaded not guilty and were tried by a jury from June 24, 2003 to July 2, 2003.[3]

Petitioner's trial counsel was Christopher D. Warren, Esq.[4]  Among the evidence against Petitioner was the involvement of confidential informant Anne Sachs.[5]  Ms. Sachs, in cooperation with Pennsylvania State Troopers, made several controlled buys from Petitioner between May 9, 2002 and September 12, 2002 while wearing a recording device.[6]  The amount of cocaine involved in Petitioner's transactions with Ms. Sachs totaled 54 grams.[7]  Trial counsel did not request, nor did the Court give, an instruction informing the jury that Ms. Sachs could not be considered a co-conspirator.[8]

---

[2] The Indictment charges Petitioner with the following crimes: conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count One); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Two through Seven); use of a telephone to facilitate a drug distribution in violation of 21 U.S.C. § 843(b) (Count Eight); as well as interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951, and aiding and abetting in violation of 18 U.S.C. § 2 (Counts Nine and Ten).  China and Perkins were charged with conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count One); as well as interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951, and aiding and abetting in violation of 18 U.S.C. § 2 (Counts Nine and Ten).  Wayns was charged with conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count One) and attempted interference with commerce by extortion under the color of official right in violation of 18 U.S.C. § 1951 (Count Eleven). (Indictment.)

[3] Pet'r Br. at *3.

[4] Pet's Mot. at ¶ 15(c).

[5] Pet'r Br. at *5.

[6] Id.

[7] Gov't Resp. in Opp'n to Pet'r Mot. [Doc. No. 193] ("Gov't Resp.") at *14.

[8] Pet'r Br. at *15.

Closing arguments were given on June 30, 2003.[9]  In its rebuttal to Petitioner's closing argument, the Government stated that "Derek Wayns got a free pass, he pleaded guilty to drug charges, robbery by extortion, he's look [sic] at 40 years in jail.  Do you want a pass like that."[10] Derek Wayns pleaded guilty on December 10, 2002 to conspiracy to distribute over 500 grams of cocaine.[11]  The sentence for that crime was not less than 5 years to not more than 40 years' imprisonment.[12] Wayns testifed against both Petitioner and China.  Pursuant to the terms of Wayns' cooperation plea agreement, the Government, in its sole discretion, would file a motion to depart from the sentencing guidelines and from any mandatory minimum sentence on Wayns behalf prior to sentencing, a motion that had not been filed when the Government made its closing arguments during Petitioner's trial.[13]

The Court charged the jury on July 1, 2003.  In its charge, the Court gave the following instruction on reasonable doubt:

> Now, I instruct that you must presume at this time that each defendant is innocent of the crimes charged.  Thus, the defendants, although accused of crimes in the indictment, begin the trial with a clean slate, with no evidence against them.  The indictment as you already know is not evidence of any kind.  The Defendants, of course, are not on trial for any acts or crimes not contained in the indictment.
>
> The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against the defendant.  The presumption of innocence alone, therefore, is sufficient to acquit the Defendants.

---

[9] Gov't Resp. at *25.

[10] Id.; Trial Tr., June 30, 2004 at 49:4-7 [Doc. No. 132].

[11]  Gov't Resp. at *26.

[12] Id.

[13] Id.; Pet'r Br. at *3.

The burden is always upon the prosecution, in this case the United States of America, to prove their guilt beyond a reasonable doubt.  This burden never shifts to any defendant, for the law never imposes upon a defendant in a criminal case, the burden or duty of calling any witnesses or producing any evidence.

The Defendants are not obligated to produce any evidence by cross-examining the witnesses for the Government, they don't even need to do that.  It is not required that the Government prove any of the Defendants guilty beyond all possible doubt, the test is one of reasonable doubt.

A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act.  Proof beyond a reasonable doubt must therefore be proof of such a convincing character that a reasonable person would not hesitate to rely upon that and act on it in a matter of importance in his or her own affairs.

If you need an example I think you can come up with some very important things in your life that you had to make decisions on, but think about how important it is when you decided whether or not to marry, or whether or not to have a child, or whether or not buy that house, which is less important than whether or not to marry or to have that child, but these are things that you think about usually, you think carefully about and if you have doubts about them you reason it through.

Unless the Government proves beyond a reasonable doubt that each Defendant has committed each and every elements [sic] — elements of the offenses charged in the indictments, you must find each Defendant not guilty of the offense.

*If you the jury view the evidence in the case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, the jury, you the jury, must of course adopt the conclusion of innocence.*[14]

Trial counsel did not object to the italicized section of this instruction.[15]

Trial counsel did not object to the Court's following instructions on Count I:

Now, let's talk about Count 1, conspiracy.  Each Defendant is accused of participating in a conspiracy to possess with the intent to distribute 500 grams or more of cocaine.

---

[14] Id. at *14; Gov't Resp. at *10-*12; Trial Tr., July 1, 2003 at 8:4-9:25 (emphasis added) [Doc. No. 170].

[15] Pet'r Br. at *14.

4

. . .

Now, what are the essential elements of that offense.  To prove conspiracy to possess with intent to distribute 500 grams or more of cocaine as charged in Count 1 of the indictment, the Government must prove the following two elements beyond a reasonable doubt.

One: That the conspiracy, agreement, or understanding to possess with intent to distribute 500 grams or more of cocaine was formed by two or more persons and was existing at or about the time charged in the indictment.

Two: The Defendant or Defendants knew the purpose of the agreement and deliberately joined it with the intent to further its unlawful purpose.  Now to explain further.

To prove possession of cocaine with the intent to distribute the Government must [prove] beyond a reasonable doubt that the Defendant or Defendants intended to distribute the cocaine alleged in the indictment.

. . .

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action.

. . .

The Government must prove that the Defendant and at least one other person knowingly — and when I say the Defendant, I am referring to each on the conspiracy count — that at least the Defendant or Defendants and at least one other person knowingly and deliberately arrived at an agreement or understanding that they and perhaps others would possess with the intent to distribute 500 grams or more of cocaine by means of some common plan or course of action as alleged in Count 1 of the indictment.

It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charged conspiracy.

. . .

Before you may find that either Defendant or any other person became a member of the conspiracy charged in Count 1, the evidence in the case must show beyond a reasonable doubt that Defendant or Defendants knew the purpose or goal of the agreement or understanding and deliberately

5

entered into the agreement intending in some way to accomplish that goal or purpose by this common plan or joint action.

If the evidence establishes beyond a reasonable doubt that the Defendant or Defendants knowingly and deliberately entered into an agreement to possess with intent to distribute 500 grams or more of cocaine, the fact that the Defendant or Defendants did not join the agreement at its beginning, or did not know all of the details of the agreement, or did not participate in each act of the agreement, or did not play a major role in accomplishing this unlawful goal is not important to your decision regarding their membership in the conspiracy.

. . .

Although Count 1 of the indictment charges that the conspiracy existed between June 2000 and January 2002, it is not essential that the Government prove that the conspiracy started or ended on or about those specific dates, it is sufficient if you find that, in fact, the charged conspiracy was formed and existed for some time within the periods set forth in the Indictment.[16]

Petitioner now claims that these instructions are objectionable as they do not inform the jury it must find beyond a reasonable doubt that more than 500 grams was within the scope of Petitioner's conspiratorial agreement and foreseeable to him.[17]

On July 2, 2003, the jury found both Petitioner and China guilty.[18]  Petitioner was convicted of one count of conspiracy with intent to distribute in excess of 500 grams of cocaine, six counts of distribution of cocaine and one count of use of a telephone to facilitate a drug distribution.[19]  China was convicted of one count of conspiracy with intent to distribute in excess of 500 grams of cocaine, and two counts of interference with interstate commerce by robbery.[20]

---

[16] Gov't Resp. at *15; Trial Tr., July 1, 2003 at 32:19-22, 33:15-34:5, 35:5-17, 36:10-37:2, 40:1-7.

[17] Id. at *15.

[18] Pet'r Br. at *3.

[19] Id.

[20] Trial Tr., July 2, 2003 at 13:4-6, 7-11, 16-17, 14:18-20, 24-25, 15:1 [Doc. No. 171].

At his February 3, 2004 sentencing, Petitioner was represented by Jerome Brown, Esq.[21] According to the Pre-Sentence Investigation Report ("PSIR"), Petitioner's total offense level was 37 and his criminal history category was VI, or that of a career criminal.[22]  The applicable Guideline Range, mandatory at the time of sentencing, was 360 months to life imprisonment.[23]  Petitioner's criminal history category was based upon three prior convictions listed in PSIR paragraphs 38, 39 and 40.[24]  According to paragraph 38, Petitioner was arrested on September 15, 1986 for knowingly possessing a controlled substance and manufacture, delivery or possession with intent to manufacture or deliver a controlled substance.[25]  According to the arrest report, police observed Petitioner delivering cocaine to another person.[26]  On February 24, 1987, the Philadelphia Court of Common Pleas placed him on probation without verdict, but that probation was revoked on September 4, 1991, and a guilty verdict was entered.[27]  Petitioner was then sentenced to six to twenty-three months' imprisonment.[28]

Paragraph 39 states Petitioner was arrested on March 20, 1988 for carrying a firearm in a public street; carrying a firearm without a license; criminal conspiracy; knowingly possessing a controlled substance and manufacture, delivery or possession with intent to manufacture or deliver

---

[21] Pet'r Mot. ¶ 15(d).

[22]  Pet'r Br. at *3.

[23] Id.

[24] Gov't Resp. at *16-*17.

[25] Pre-sentence Investigation Report, Case No. 02-656-01, October 1, 2003 ("PSIR") ¶ 38.

[26] Id.

[27] Id.

[28] Id.

a controlled substance; and theft receiving stolen property.[29]  According to the criminal complaint, Petitioner was found in possession of 66.6 grams of cocaine and four hand guns on March 18, 1988.[30]  He was adjudged guilty on October 1, 1991 in the Philadelphia Court of Common Pleas and sentenced to four to eight years' imprisonment.[31]

Paragraph 40 details Petitioner's arrest on June 30, 2000.[32]  According to an affidavit of probable cause, an Abington Police Officer stopped Petitioner's vehicle on June 10, 2000 for displaying counterfeit inspection stickers.[33]  After being given permission to search the vehicle, the officer found three children and a loaded 40-caliber glock handgun.[34]  Petitioner was charged with carrying a firearm without a license; carrying a firearm by a convicted felon; endangering the welfare of a child; recklessly endangering another person; and altered/forged documents and plates.[35]  On February 15, 2001, Petitioner pleaded guilty and was sentenced to two years' probation by the Montgomery County Court.[36]

Neither Petitioner nor his counsel contested these convictions at the hearing.[37]  Petitioner's counsel argued that Petitioner's criminal history category significantly overrepresented the

---

[29] Id. ¶ 39.

[30] Id.

[31] Id.

[32] Id. ¶ 40.

[33] Id.

[34] Id.

[35] Id.

[36] Id.

[37] Gov't Resp. at *17; Sentencing Hrg. Tr., February 3, 2004, at 18:20-19:19.

seriousness of his criminal history and the likelihood that he would commit future crimes, because Petitioner's prior crimes were "remote conduct committed by someone at a young age."[38]   The Court denied this argument and ruled that Petitioner was not entitled to "a departure on that basis alone, because of the time and the nature of the previous crimes."[39]   The Court stated that it believed Petitioner's "previous crimes and punishment had gone unrepented and [Petitioner] was continuing a pattern that had started back as early as 1988."[40]   The Court then sentenced Petitioner to three hundred sixty months' imprisonment, eight years' supervised release, a $2500.00 fine and an $800.00 special assessment.[41]   Petitioner timely appealed his conviction and sentence.

Petitioner's appellate counsel was Stuart Wilder, Esq.[42]   The Third Circuit affirmed Petitioner's sentence and conviction on January 21, 2005.[43]   The Supreme Court denied Petitioner's petition for certiorari on November 28, 2005.[44]   Petitioner timely filed a Motion to Vacate, Set Aside, and Correct Sentence pursuant to 28 U.S.C. § 2255, on November 13, 2006.[45]   Petitioner was ordered on November 27, 2006 to file his motion on the Court's standard form within thirty days.[46]   In response, Petitioner timely filed the instant Motion to Vacate, Set Aside, and Correct Sentence

---

[38] Sentencing Hrg. Tr., February 3, 2004, at 20:9-12.

[39] Sentencing Hrg. Tr., February 3, 2004, at 70:14-15.

[40] Id. at 70:22-24.

[41] Pet'r Br. at *3.

[42] Pet'r. Mot. ¶ 15(e).

[43] Pet'r. Br. at *3 (see United States v. Odell Robert Johnson, 119 Fed. Appx. 415 (3d Cir. 2005)).

[44] Pet'r. Br. at *3 (see Odell Robert Johnson v. United States, 126 S.Ct. 733 (2005)).

[45]  Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255 [Doc. No. 187].

[46] Order, November 27, 2006 [Doc. No. 188].

pursuant to 28 U.S.C. § 2255, on December 20, 2006.[47]   The Court held an evidentiary hearing in this matter on June 28, 2007.[48]   Mr. Warren, Mr. Brown and Petitioner testified at the evidentiary hearing.

At the evidentiary hearing, Mr. Warren discussed the strength of the Government's case and his assessment as trial counsel, that the only defense to the counts for distribution of cocaine was to convince the jury Petitioner was not on the audio and videotapes, but that the charges were otherwise indefensible.[49]   He believed that the conspiracy count was defensible, as it depended on testimony of cooperating witnesses.[50]   Mr. Warren discussed trial strategy with Petitioner, a possible plea with a cooperation agreement, and the sentences Petitioner would face.[51]   Mr. Warren testified he advised Petitioner "the best course of action would be for him to plead guilty, cooperate with the Government and obtain substantial assistance departure."[52]   He also testified that he told Petitioner that "absent cooperation the only thing he would get would be a three level reduction for acceptance of responsibility, which given the [relevant Guideline] range . . . did not appear to me to be a substantial benefit, but that was his choice."[53]   According to Mr. Warren, Petitioner refused to cooperate against China or to plead guilty.[54]

---

[47]  Pet'r. Br. at *3 (see Odell Robert Johnson v. United States, 126 S.Ct. 733 (2005)).

[48]  Order, April 17, 2007 [Doc. No. 196].

[49]  Evid. Hrg. Tr., June 28, 2007 at 39:1-12 [Doc. No. 203].

[50]  Id. at 39:13-17.

[51]  Id. at 40:10-21.

[52]  Id. at 45:23-46:1.

[53]  Id. at 46:4-9.

[54]  Id. at 47:5-9.

Petitioner also testified at the evidentiary hearing claiming that Mr. Warren stated he could win his case.[55]  Petitioner also disputed that Mr. Warren had discussed trial strategy or pleading guilty with him.[56]  Petitioner did admit, however, that he understood that he could plead guilty without cooperating.[57]  Petitioner stated that if he had understood the strength of the case against him and that he would have received a three point reduction for acceptance of responsibility with the ability to still challenge the amount of drugs involved and his career criminal categorization, then he would have pleaded guilty.[58]

Sentencing counsel, Mr. Brown, testified that he reviewed the PSIR with Petitioner.[59]  Mr. Brown stated that he relied upon Petitioner's admission that he had pleaded guilty to the crimes listed in the PSIR.[60]  Mr. Brown also admitted that he had not requested the underlying documents for the three convictions listed in paragraphs 38 through 40 of the PSIR.[61]  According to Mr. Brown, Petitioner was "very proactive," "intimately involved in every step of the process that I had with him," and "very savvy."[62]  The Government produced the certified copies of Petitioner's convictions as listed in the PSIR before the evidentiary hearing.[63]  Petitioner admitted that Mr. Brown asked him

---

[55] Id. at 52:2-7.

[56] Id. at 53:6-10; 53:25-54:9.

[57] Id. at 54:10-15.

[58] Id. at 57:25-58:8.

[59] Id. at 7:2-8:6.  The Court notes that Mr. Warren, not Mr. Brown, filed Petitioner's objections to the PSIR. Id. at 47:23-48:9.

[60] Id. at 9:25-10:10.

[61] Id. at 8:24-9:4

[62] Id. at 7:11-13, 9:12.

[63] Id. at 28:2-6.

about each of his prior convictions.[64]   However, Petitioner claims that he told Mr. Brown he pleaded

only to reckless endangerment and counterfeited tags with regard to the paragraph 40 conviction.[65]

Petitioner claims that Mr. Brown did not discuss strategy for the sentencing hearing with him.[66]

## III.    DISCUSSION

Habeas corpus relief protects only "against a fundamental defect which inherently results in

a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair

procedure."[67]   Section 2255 allows a prisoner in federal custody to move for habeas corpus relief

"upon the ground that the sentence was imposed in violation of the Constitution or laws of the

United States."[68]   Such a motion "is addressed to the sound discretion of the district court."[69]   If the

sentencing court finds "a denial or infringement of the constitutional rights of the prisoner as to

render the judgment vulnerable to collateral attack," it may grant habeas corpus relief by discharging

or re-sentencing a federal prisoner.[70]   Pursuant to § 2255, habeas corpus relief may be granted for

claims of constitutional error.[71]   Yet, a prisoner must first establish that such an error occurred to be

successful on his claim.[72]

---

[64] Id. at 60:4-10.

[65] Id. at 60:11-22.

[66] Id. at 61:2-4.

[67] United States v. Deluca, 889 F.2d 503, 506 (3d Cir. 1989) (quoting Hill v. United States, 368 U.S. 424, 428 (1962).

[68] 28 U.S.C.A. § 2255(a).

[69] United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).

[70] 28 U.S.C.A. § 2255(b).

[71] United States v. Addonizio, 442 U.S. 178, 185 (1979).

[72] See Deluca, 889 F.2d at 506.

If a prisoner fails "to raise his claim on direct review, the writ of [habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"[73]   A petitioner must demonstrate cause by showing "'some external impediment' prevented him from raising the claim," such as ineffective counsel.[74]  Prejudice will be found when "'errors at trial . . . worked to [the petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[75]  "A further exception exists where 'a fundamental miscarriage of justice would result from a failure to entertain the claim.'"[76]  Petitioner claims that he was denied effective assistance of counsel at all critical stages of his criminal proceedings in violation of the Sixth Amendment of the United States Constitution, and that he was convicted and sentenced in violation of his right to due process under the Fifth Amendment.

## A.    Right to Assistance of Counsel under the Sixth Amendment

The Sixth Amendment right to assistance of counsel is actually "the right to effective counsel."[77]  Petitioner claims that his trial, sentencing and appellate counsel were each ineffective, thus violating his rights under the Sixth Amendment.  To establish a claim for ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that Petitioner was prejudiced by it.[78]  To succeed on the first prong, Petitioner must show that his

---

[73] Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

[74] Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992) (quoting McClesky v. Zant, 499 U.S. 467, 494, 497 (1991)).

[75] Wise, 958 F.2d at 34 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original)).

[76] Wise, 958 F.2d at 34 (quoting McClesky, 499 U.S. at 494-95).

[77] Strickland v. Washington, 466 U.S. 668, 686 (1984).

[78] United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (citing Strickland, 466 U.S. at 687).

13

counsel's representation "fell below an objective standard of reasonableness."[79]  Petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[80]  The Court will determine "whether counsel's assistance was reasonable considering all the circumstances," including prevailing professional norms of practice.[81]  A fair assessment of attorney performance makes "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[82]  The Court's scrutiny of counsel's performance will be "highly deferential," "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of professional assistance."[83]

In order to demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[84] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[85]  The Court may determine if there is sufficient prejudice to maintain an ineffectiveness claim before evaluating the reasonableness of counsel's performance.[86]

### 1.    Trial Counsel

---

[79] Strickland, 466 U.S. at 688.

[80] Id. at 690.

[81] Id. at 688.

[82] Id. at 689.

[83] Id.

[84] Id. at 694.

[85] Id.

[86] Lilly, 536 F.3d at 196 (citations omitted).

14

Petitioner alleges that his trial counsel, Mr. Warren, erred in failing to (1) conduct a reasonable pretrial investigation before advising Petitioner, (2) object to the Court's failure to inform the jury that the amount of drugs attributed to the conspiracy must have been within the scope of the conspiratorial agreement and foreseeable to Petitioner, (3) request an instruction that a cooperating witness could not be a member of a conspiracy, and (4) object to the Court's two-inference instruction on reasonable doubt.[87]   Petitioner also argues that these errors in the aggregate made trial counsel ineffective.[88]   The Court disagrees.

<u>       a.  Pretrial Investigation</u>

Petitioner complains that Mr. Warren was ineffective because he did not conduct a reasonable pretrial investigation and therefore, failed to learn that the evidence of Petitioner's guilt was overpowering.[89]   Petitioner claims that if Mr. Warren had explained that he did not stand a chance at trial, Petitioner would have pleaded guilty and received a reduction of his sentence for acceptance of responsibility.[90]   Counsel does have "a duty to make reasonable investigations" prior to trial.[91]   Based on such investigations, counsel should "make an independent examination of the facts, circumstances, pleadings and laws involved and then offer his informed opinion as to what plea should be entered."[92]   Moreover, if the evidence of guilt is overwhelming, the Third Circuit has

---

[87] Pet'r. Br. at *12-*16.

[88] <u>Id.</u> at *16.

[89] <u>Id.</u> at *13.

[90] <u>Id.</u> at *13-*14.

[91] <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 111 (3d Cir. 1990) (<u>citing</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 385 (1986)).

[92] <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 721 (1948).

held that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."[93]

Here, the Court finds the testimony of Mr. Warren credible.  The Court finds that Mr. Warren recommended Petitioner plead guilty, cooperate with the Government and hope to receive a substantial reduction in his sentence as a result of such cooperation.  The Court also finds that Mr. Warren adequately explained the 3-level reduction that Petitioner would receive for acceptance of responsibility if he pleaded guilty, and that Petitioner understood he need not cooperate to plead guilty.  Thus, the Court finds that Mr. Warren gave Petitioner a reasonable evaluation of the Government's case, as well as an adequate explanation of the sentence exposure Petitioner faced.  Moreover, Mr. Warren gave the exact advice Petitioner now claims he should have been given.  Petitioner never identifies any investigation Mr. Warren could have conducted that would have changed Petitioner's decision.  It is Petitioner's burden to show prejudice; he has not.  For all the reasons above, Petitioner cannot establish prejudice based on Mr. Warren's pretrial investigation or advice, and this claim must fail.

b.      Jury Instructions for Count I of the Indictment

With regard to the Court's instructions to the jury on Count I of the Indictment, Petitioner argues that Mr. Warren was ineffective because he did not object to the Court's instructions on the grounds that it failed to inform the jury it must find beyond a reasonable doubt that more than 500 grams of cocaine was not only within the scope of Petitioner's conspiratorial agreement, but also foreseeable to Petitioner.[94]  Petitioner claims that the Court's charge impermissibly allows conviction

---

[93] United States v. Day, 969 F.2d 39, 43-44 (3d Cir. 1992).

[94] Pet'r Br. at *16.

if the conspiracy taken as a whole involved more than 500 grams of cocaine.[95]  Petitioner also argues

that Mr. Warren was ineffective because he did not request an instruction informing the jury that the

Government's cooperating witness, Ms. Sachs, could not be considered a member of the

conspiracy.[96]  Petitioner claims that considering the overwhelming nature of the evidence against him

on the distribution counts involving Ms. Sachs and the underwhelming amount of evidence against

him on the conspiracy charge, there is a reasonable probability that the jury convicted him on the

false assumption that Ms. Sachs was a member of the conspiracy.[97]

A jury charge must provide "a clear articulation of the relevant legal criteria."[98]  A jury

instruction is not erroneous is it "'fairly and adequately' present the issues in the case without

confusing or misleading the jury."[99]   The Court's instruction to the jury on Count I required

Petitioner to have "knowingly and deliberately arrived at an agreement or understanding . . . [to]

possess with the intent to distribute 500 grams or more of cocaine."[100]  "Knowingly" requires action

that is "deliberate, conscious."[101]   "Deliberate" is defined as "intentional, premeditated, fully

considered."[102]  As compared to Petitioner's requested jury instruction that the jury must find beyond

---

[95] Id.

[96] Id. at *15.

[97] Id.

[98] United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987).

[99] United States v. Ellis, 156 F.3d 493, 498 n.7 (3d Cir. 1998) (citing United States v. Simon, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993)).

[100] Gov't Resp. at *15; Trial Tr., July 1, 2003 at 35:9-12.

[101] BLACK'S LAW DICTIONARY (8th ed. 2004), knowing.

[102] Id., deliberate.

17

a reasonable doubt that more than 500 grams of cocaine was not only within the scope of Petitioner's conspiratorial agreement, but also foreseeable to Petitioner, the Court agrees with the Government that the Court's actual instruction was stronger than the one Petitioner now suggests.  It requires the jury to find a higher level of culpability to convict.  Thus, Mr. Warren did not act unreasonably when he did not object to the Court's instruction.  Moreover, if Petitioner intentionally and consciously agreed to possess more than 500 grams of cocaine with the intent to distribute, then it was certainly within the scope of his agreement and foreseeable to him that the conspiracy would involve that quantity of drugs.  Hence, Petitioner cannot demonstrate that if Mr. Warren had objected and the Court had given the instruction now suggested by Petitioner, then the jury's verdict on Count I would have been different.  Since Petitioner cannot demonstrate deficient performance by counsel or prejudice, the Court finds that Mr. Warren was not ineffective when he did not object to the Court's instructions on Count I.[103]

As for Mr. Warren's failure to request a jury instruction regarding Ms. Sachs, Petitioner has not demonstrated a reasonable probability that the jury's verdict in Count I was based upon the false assumption that Ms. Sachs was a conspirator.  First, the sale of drugs was not part of the conspiracy charged in Count I.  The conspiracy revolved around the procurement and transportation of cocaine from California and Texas to Philadelphia.  The other overt acts charged in the conspiracy were thefts of money and drugs from other drug dealers.  The Court finds a clear dividing line between these acts attributed to the conspiracy, namely transporting drugs and theft, and Petitioner's

---

[103] Petitioner also argues that his sentencing counsel should have objected to the Court's computation of his sentence, contending that the Court should have informed the jury that conviction on Count I required a finding beyond a reasonable doubt that 500 grams or more of cocaine with within the scope of Petitioner's conspiratorial agreement, and foreseeable to Petitioner.  This argument lacks merit for the same reasons Petitioner's trial counsel was not ineffective in failing to object on the same grounds.  Therefore, the Court will dismiss Petitioner's claim that his sentencing counsel was ineffective for this reason.

individual *sales* of cocaine to Ms. Sachs.  Furthermore, the time frames are not consistent.  The conspiracy operated from June 2000 to January 2002.   In contrast, the controlled buys between Petitioner and Ms. Sachs occurred later in 2002 on May 9, May 16, May 23, May 30, June 3, and July 24.  Finally, the conspiracy charge required the jury to find Petitioner possessed 500 grams or more of cocaine with the intent to distribute.  Petitioner's combined transactions with Ms. Sachs involved only 54 grams of cocaine.  The Court finds that Petitioner has not shown a reasonable probability that the jury verdict was based upon a false assumption that Ms. Sachs was a member of the conspiracy.  As a result, the Court also finds that Mr. Warren acted reasonably, and that he was not ineffective in failing to request a jury instruction that Ms. Sachs could not be considered a conspirator under Count I.[104]

Petitioner cites Old Chief v. United States in support of his claim,  arguing that absent the jury instruction, the jury was lured "into declaring guilt on a ground different from proof as to the specific offense charged."[105]   Old Chief is, however, inapposite, addressing the scope of a trial judge's discretion under Rule 403 of the Federal Rules of Evidence.[106]   Moreover, the Court has already found that Petitioner did not establish a reasonable probability that the jury's verdict on Count I was based on any improper ground.  Hence, the Court will dismiss Petitioner's claim.

c.      Two-inference Jury Instruction on Reasonable Doubt

Petitioner claims Mr. Warren was ineffective for failing to object to the two-inference jury

---

[104]   It should also be noted that Petitioner produced insufficient evidence that such an instruction would have altered the jury's verdict on Count I, given the many distinctions between the actions giving rise to the conspiracy count and those giving rise to the distribution counts.  Thus, Petitioner not only fails to demonstrate deficient performance by counsel, but also prejudice as well.

[105] 519 U.S. 172, 180 (1997).

[106] Id.

instruction concerning reasonable doubt.[107]   Petitioner argues that the instruction paints the Government's burden as less than beyond a reasonable doubt, and fails to provide the jury with any real guidance.[108]   "Due process is satisfied if the instructions, taken as a whole, accurately convey the concept of reasonable doubt to the jury."[109]   Reasonable doubt is "a fair doubt, based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act."[110] "[N]o particular set of words is mandated."[111]

Contrary to Petitioner's assertion, while the Third Circuit disapproves of two-inference instructions, they are not *per se* invalid.[112]   If such an instruction is given, it must be determined "whether this deficiency was rectified by the remainder of the reasonable doubt instruction."[113]   For example, even though the two-inference instruction was given in United States v. Isaac, the Third Circuit found that the jury charge, as a whole, was not constitutionally deficient.[114]   Here, the jury charge given during Petitioner's trial explained reasonable doubt in even more depth than those found acceptable in Isaac.[115]   Moreover, the Court repeatedly throughout its charge specifically stated

---

[107] Pet'r Br. at *14.

[108] Id.

[109] United States v. Isaac, 134 F.3d 199, 202 (3d Cir. 1998).

[110] Id.

[111] Victor v. Nebraska, 511 U.S. 1, 5 (1994).

[112] Isaac, 134 F.3d at 203.

[113] Id.

[114] Id. at 202.

[115] See id.

that it is the Government's burden to prove its case beyond a reasonable doubt.[116]  Hence, the Court finds that the jury instructions in this case, as a whole, accurately conveyed the concept of "reasonable doubt."  Hence, the Court finds Mr. Warren's failure to object to the two-inference jury instruction was reasonable, and Petitioner's claim must fail.

d.    Trial Counsel's Errors in the Aggregate

Petitioner argues that Mr. Warren's errors, in the aggregate, undermine confidence in the outcome.[117]  Analyzing individually each alleged deficiency in the jury charge claimed by Petitioner, the Court found all were without merit.  The Court's instructions to the jury on Count I were proper, exceeding the level of culpability required by the instruction suggested by Petitioner.[118]  Moreover, an instruction that Ms. Sachs could not be considered a co-conspirator under Count I was, as explained *supra*, unnecessary.[119]  Finally, the Court's instructions on reasonable doubt were also proper.[120]  Hence, Petitioner has failed to establish that his conviction on Count I was "based on confusion, conjecture or speculation," and Petitioner's claim that Mr. Warren's trial errors, in the aggregate, led to Petitioner's conviction on Count I will be dismissed.

2.    **Sentencing Counsel**

Petitioner next claims that his sentencing counsel, Mr. Brown, was ineffective for failing to

---

[116] See Trial Tr., July 1, 2003 at 20:19-21, 26:13-14, 32:14-18, 33:18-19, 34:2-5, 41:2-4, 43:11-12, 44:1-10, 16-19, 45:7-10, 25-46:4, 11-14, 49:21-24, 50:23-25, 54:12-18, 20-24, 55:3-7, 56:24-57:3.

[117] Pet'r Br. at *16.  The Court notes that Petitioner only argues that Mr. Warren's errors with respect to the jury charge undermine confidence in Petitioner's conviction.  Petitioner does not argue that Mr. Warren's pretrial investigation and/or advice were a factor.

[118] See, supra Part III.A.1.b.

[119] Id.

[120] See, supra Part III.A.1.c.

request production of the official documentation underlying the convictions described in paragraphs 38, 39 and 40 of the PSIR.[121]   Moreover, Petitioner also alleges that his sentencing counsel was ineffective for failing to develop the arguments that Petitioner's sentence was unconstitutional because (1) it was based upon mandatory sentencing guidelines;[122] (2) it penalized the exercise of his right to trial by jury;[123] and (3) it was much greater than the sentenced imposed on Wayns.[124]   The Court finds each of Petitioner's arguments lack merit and will be dismissed.

      a.     Official Documentation of Petitioner's Prior Convictions

Petitioner contends that Mr. Brown was ineffective because he did not request production of the official documentation underlying Petitioner's prior convictions described in paragraphs 38, 39 and 40 of the PSIR.  Petitioner argues that without such official documentation, the career offender classification imposed by the sentencing court was improper.  "I]t is well established in this circuit, and all others, that a sentencing court may rely on the facts set forth in the presentence report when their accuracy is not challenged by the defendant."[125]   It is undisputed that Petitioner did not dispute the accuracy of the PSIR during his sentencing.  Thus, the Court did not require official documentation of the convictions, and instead, could properly rely on the facts set forth in the PSIR when determining Petitioner's criminal history category.  An objection by Mr. Brown, arguing that there was insufficient support for the Court's classification of Petitioner as a career offender, would

---

[121] Pet'r Br. at *17.

[122] Id. at *18.

[123] Id. at *18, *19-*20.

[124] Id. at *18, *20.

[125] United States v. Watkins, 54 F.3d 163, 166-67 (3d Cir. 1995).

have been without merit.  Hence, Mr. Brown's failure to challenge Petitioner's conviction and sentence on the grounds of inadequate documentation will not support a claim of ineffectiveness.

Petitioner's argument that Mr. Brown should have requested the Government to supply the missing documents must also fail.  It is undisputed that Mr. Brown read and discussed the PSIR with Petitioner. Although Petitioner claims he mentioned some discrepancies to Mr. Brown regarding paragraph 40 of the PSIR, the Court finds Mr. Brown more credible when he states that Petitioner verified each of the convictions as listed.  Moreover, Petitioner did not object to any of the convictions during his sentencing hearing.  Counsel's actions "are usually based, quite properly, on information supplied by the defendant."[126]  Moreover, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable."[127]  Mr. Brown acted reasonably when he relied upon Petitioner's verification of the prior convictions.  Moreover, it was reasonable for Mr. Brown, relying upon said verification, to assume that the official documentation would not contravene the PSIR in any way.  Therefore, Mr. Brown acted reasonably in not requesting the Government to supply official documentation of Petitioner's prior convictions.  As Petitioner cannot show that his counsel's performance was deficient, this claim for ineffectiveness will be dismissed.

Petitioner cites Shepard v. United States in support of his claim, arguing that a sentencing court may rely on only "…the terms of the charging documents, the terms of a plea agreement or transcript of colloquy by the defendant, or to some judicial record of this information."[128]  Yet, the

---

[126] Kimmelman, 477 U.S. at 384.

[127] Strickland, 466 U.S. at 691.

[128] 544 U.S. 13, 26 (2005).

crux of <u>Shepard</u> is "to limit the scope of judicial factfinding on the disputed generic character of a prior plea."[129]  <u>Shepard</u> dictates what a court may consider when determining the factual basis of a prior conviction.[130]  Contrary to Petitioner's argument, it does not address the quantum of proof necessary before a prior conviction will impact a defendant's criminal history category.  Thus, <u>Shepard</u> does not alter the Court's conclusion that Mr. Brown acted reasonably in not objecting that the convictions were inadequately supported, and in not requesting official documentation from the Government.  Hence, Petitioner's ineffectiveness claim on these grounds must fail.

b.  Mandatory Sentencing Guidelines

Petitioner argues that Mr. Brown was unreasonable for failing to develop the argument that Petitioner's sentence was unconstitutional because it was imposed based upon mandatory sentencing guidelines, later ruled unconstitutional in <u>United States v. Booker</u>.[131]  Yet, counsel's conduct must be viewed in light of the circumstances at the time.[132]  In general, "an attorney's performance [will not] be considered unreasonable under prevailing professional standards when [he] does not make an [argument] which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law."[133]  <u>Booker</u> "brought about sweeping changes in the realm of federal sentencing."[134]  Petitioner advances no reason why Mr.

---

[129] <u>Id.</u>

[130] <u>Id.</u> at 25.

[131] 543 U.S. 220, 259 (2005).

[132] <u>Strickland</u>, 466 U.S. at 690.

[133] <u>United States v. Davies</u>, 394 F.3d 182, 189 (3d Cir. 2005) (citing <u>Gov't of Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989)).

[134] <u>United States v. Davis</u>, 407 F.3d 162, 163 (3d Cir. 2005).

24

Brown should have anticipated the changes wrought by Booker.  Thus, the Court finds it reasonable that sentencing counsel did not anticipate the same, and will dismiss Petitioner's claim that Mr. Brown was ineffective for this reason.

c.     Penalty on Petitioner Exercising His Right to a Trial by Jury

Petitioner argues that Mr. Brown was ineffective for failing to investigate and argue that his sentence was an unjustified and unreasonable penalty imposed upon his Sixth Amendment right to trial by jury.[135]  This argument is without merit.  In United States v. Cohen, the Third Circuit held constitutional a reduction for acceptance of responsibility under the Sentencing Guidelines.[136]  The Third Circuit relied upon a Supreme Court case, Corbitt v. New Jersey, which held that a murder statute providing a shorter sentence for defendants who pleaded *non vult* was not only constitutional, but also did not violate a defendant's Sixth Amendment right to trial.[137]  The Supreme Court recognized that "confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas."[138]  It was reasonable for Mr. Brown to not raise such a frivolous argument to the Court, and the Court will dismiss Petitioner's claim that his sentencing counsel was ineffective on this basis.[139]

---

[135] Pet'r Br. at *19-*20.

[136] 171 F.3d 796, 805 (3d Cir. 1999).

[137] Id. (citing Corbitt v. New Jersey, 439 U.S. 212, 218 (1978)).

[138] Corbitt, 439 U.S. at 220 (internal citations and quotation marks omitted).

[139] Petitioner's claim that his sentence violates the Fifth Amendment because it is an unjustified and unreasonable penalty imposed upon his Sixth Amendment right to trial by jury will be dismissed for the same reasons.

d.      Disparity Between Petitioner's Sentence and That of His Co-
Defendant

Petitioner claims Mr. Brown was ineffective for failing to investigate and make an argument regarding sentence disparity, specifically the disparity between Petitioner's sentence and the one imposed on his co-defendant, Wayns.[140]  It is well-established that a criminal defendant has no constitutional right to a sentence equal in duration to that of his or her co-defendants.[141]  The Third Circuit has held that disparity between sentences of co-defendants is "not a proper basis for a downward departure" under the Sentencing Guidelines.[142]  Thus, Petitioner has no entitlement to the same, or even a similar sentence as Wayns.

Moreover, at the time the Court sentenced both Wayns and Petitioner, the sentencing guidelines were mandatory.[143]  Petitioner was not granted any downward departure, and therefore, the Court did not depart from the applicable range.  In contrast, the Court granted the Government motion on Wayns' behalf for a downward departure for substantial assistance.[144]  As a result, the Court had a basis for imposing a sentence below the applicable guidelines range and the mandatory minimum.[145]  Hence, the two sentences are not comparable, and it was reasonable for Mr. Brown to not argue otherwise.[146]  As Mr. Brown was not ineffective for failing to argue there was an

---

[140] Pet'r Br. at *18.

[141] United States v. Smith, 839 F.2d 175, 179 (3d Cir. 1988).

[142] United States v. Higgins, 967 F.2d 841, 845 (3d Cir. 1992).

[143] See 18 U.S.C. § 3553(b)(1) (2003).

[144] Gov't Resp. at *23; see also United States Sentencing Guidelines § 5k1.1 (2008).

[145] Id.

[146] Petitioner's claim that this sentencing disparity violated his Fifth Amendment right to due process will be dismissed for the same reasons.

unconstitutional disparity between Petitioner's and Wayns' sentences, the Court will dismiss Petitioner's claim.

### 3.    Appellate Counsel

Petitioner claims that his appellate counsel, Mr. Wilder, was ineffective for failing to develop the argument on appeal that Petitioner's sentence was unconstitutional because it was imposed based on the false assumption that the sentencing guidelines were mandatory and not advisory.[147] Petitioner, however, has not produced any evidence that counsel's performance fell below an objective standard of reasonableness.  The sentencing guidelines were mandatory when Petitioner's sentence was imposed, as well as when he filed his appeal and his appellate brief.[148]  They were even mandatory when Petitioner's appeal was taken under submission.[149]  The Court does recognize that the Third Circuit affirmed Petitioner's conviction and sentence on January 21, 2005, nine days after Booker was decided.[150]  Booker was decided on January 12, 2005, and expressly stated that its holdings applied to all cases on direct review.[151]  Nevertheless, Mr. Wilder's failure to "recognize and raise every conceivable constitutional claim" on appeal does not automatically rise to the level of a constitutional violation.[152]  Yet, Petitioner makes no effort to explain how this nine-day interim effects the reasonableness of Mr. Wilder's performance, nor is the Court convinced that Petitioner

---

[147] Pet'r Br. at *19.

[148] See United States v. Johnson, 119 Fed. Appx. 415 (3d Cir. 2005).

[149] See id.

[150] See United States v. Johnson, 119 Fed. Appx. 415 (3d Cir. 2005).

[151] 543 U.S. at 268.

[152] Murray v. Carrier, 477 U.S. 478, 486 (1986) (holding that "the mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it" did not suffice as cause for a procedural default because it did not rise to the level of a constitutional violation).

could have made such an argument persuasively.  It is Petitioner's burden to establish deficient performance of counsel, and he has failed to do.  Thus, the Court will dismiss this claim.

### B.       Right to Due Process under the Fifth Amendment

The Due Process Clause of the Fifth Amendment of the United States Constitution guarantees that no person shall "be deprived of life, liberty or property, without due process of law."[153]  This clause expresses the requirement of "fundamental fairness."[154]  Petitioner argues that his conviction was obtained and his sentence imposed in contravention of the Fifth Amendment Due Process Clause.[155]  Petitioner, however, did not raise these issue at trial, during his sentencing or on direct appeal.  Thus, these claims have been procedurally defaulted and "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual prejudice' . . . or that he is 'actually innocent.'"[156]

Petitioner does not attempt to argue that his procedural default should be excused, nor does he even acknowledge that his claims have been procedurally defaulted.  "Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default."[157]  Hence, "[w]hile ineffective assistance of counsel can be cause for a procedural default, the attorney's

---

[153] United States Const. Amend. V.

[154] United States v. Kole, 164 F.3d 164, 171 (3d Cir. 1998).

[155] The Court has already noted that several of Petitioner's claims under the Fifth Amendment mirror his ineffectiveness one, and will be dismissed for the same reasons.  See, supra Part.III.A.2.c, d.  Hence, the Court will not revisit those arguments here.

[156] Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted).

[157] Murray, 477 U.S. at 492.

28

ineffectiveness must rise to the level of a Sixth Amendment violation."[158]   As explained *supra*, Petitioner has not demonstrated that any of his counsel were constitutionally ineffective.[159] Furthermore, Petitioner does not contend that he is actually innocent, or that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."[160]  Thus, the Court finds no reason to excuse Petitioner's procedural default of his Fifth Amendment claims and will decline to review the same.[161]

### C.    Certificate of Appealability

When a habeas petition is denied, Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit and 28 U.S.C. § 2253(c) requires the district court to make a determination of whether a certificate of appealability should issue.  Under AEDPA, a certificate of appealability may not issue unless the applicant has made a "substantial showing of the denial of a constitutional right."[162]  This requires a showing sufficient that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[163]  When the district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate, at least, that reasonable jurists would find

---

[158] Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (citing Murray, 477 U.S. at 488).

[159] See, supra, Part III.B.

[160] Bousley, 523 U.S. at 623 (internal citations and quotation marks omitted).

[161] See Murray, 477 U.S. at 485 (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)); see also Lilly, 536 F.3d at 195 (refusing to issue a certificate of appealability for procedurally defaulted claims).

[162] 28 U.S.C. § 2253(c) (2008).

[163] Slack v. McDaniel, 529 U.S. 473, 484 (2000).

debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; *and* (2) whether the district court was correct in its procedural ruling.[164]  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."[165]

Petitioner did not make a showing sufficient that reasonable jurists could disagree on whether any of his counsel were constitutionally ineffective.  Moreover, reasonable jurists would not find debatable the Court's decision not to excuse Petitioner's procedural default of his Fifth Amendment claims.  Therefore, a certificate of appealability will not issue as to Petitioner's claims in his motion for habeas corpus relief.

## III.   **BOOKER RE-SENTENCING**

In the interests of fairness and justice, the Court is compelled to raise *sua sponte* the issue of whether Petitioner is entitled to a Booker re-sentencing.  As previously noted, Booker was decided on January 12, 2005, expressly stating that it applied to cases on direct review.[166]  Petitioner's appeal was decided by the Third Circuit on January 21, 2005, nine days after Booker was decided.[167]  It is apparent to the Court, after an examination of the record chronology, that Petitioner's direct appeal was pending at the time Booker was decided.  The Court firmly believes that as the Third Circuit treated other cases pending on direct appeal by reversing *seriatum* the sentence and remanding for

---

[164]  Slack, 529 U.S. at 484.

[165]  Id.

[166]  543 U.S. at 268.

[167]  See Johnson, 119 Fed. Appx. at 415.

a new sentencing hearing pursuant to <u>Booker</u>; so, too, is Petitioner entitled to that same procedure. Yet, the Court is without authority to achieve this result by way of collateral attack in this matter. Nevertheless, as in <u>United States v. Clark</u>,[168] this Court finds it appropriate that Petitioner should be granted a re-sentencing pursuant to <u>Booker</u> because his case was pending on direct appeal at the time <u>Booker</u> was decided.  The Court will direct the parties to address this issue by filing with the Court their respective positions on whether Petitioner is entitled to a <u>Booker</u> re-sentencing, specifying whether the Government opposes vacating Petitioner's sentencing and remanding for a re-sentencing pursuant to <u>Booker</u>.

## IV.   CONCLUSION

Petitioner has not demonstrated that his trial, sentencing or appellate counsel were constitutionally ineffective.  Petitioner also has not demonstrated a basis upon which the Court should excuse the procedural default of his Fifth Amendment claims, which he failed to raise at trial, during his sentencing or on direct appeal.  Therefore, the Court will deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  This matter will remain open, however, for fourteen days for the Court to entertain the parties' positions on whether Petitioner is entitled to a re-sentencing pursuant to <u>Booker</u>.

An appropriate Order follows.

---

[168] 2006 WL 3061306 at *3-*4 (E.D. Pa. October 27, 2006), <u>aff'd</u>, <u>United States v. Clark</u>, 282 Fed. Appx. 189 (3d Cir. 2008).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ODELL ROBERT JOHNSON,** | ) | |
| | ) | **CRIMINAL ACTION** |
| Petitioner, | ) | **02-cr-656-01** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **CIVIL ACTION** |
| | ) | **06-cv-5003** |
| Respondent. | ) | |

_____

**ORDER**

　　**AND NOW**, this 7th day of November, 2008, upon consideration of Petitioner Odell Robert Johnson's Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 189], the Government's Response in Opposition [Doc. No. 193], Petitioner's Reply [Doc. No. 194], and Petitioner's Post Hearing Memorandum in Support of his Motion [Doc. No. 201], it is hereby **ORDERED** as follows:

1. Petitioner's Motion is **DENIED**;

2. A certificate of appealability **SHALL NOT ISSUE** as to Petitioner's claims in his Motion; and

3. The parties shall file with the Court their positions and accompanying memoranda of law on whether Petitioner is entitled to a re-sentencing pursuant to United States v. Booker[169] within **fourteen (14) days** of the date of this Order, specifically addressing whether the Government opposes vacating Petitioner's sentence and remanding for a re-sentencing pursuant to Booker.

---

[169] 543 U.S. 220 (2005).

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**